Good morning, Your Honors. I'm Kelly Tillery from Cover Hamilton for Appellate Holt's Company. May it please the Court. Your Honors, the two marks at issue in this matter are, one, the prior adjudicated mark, and I say adjudicated carefully because it was not adjudicated on its merits. It's a design and word mark. It doesn't make any difference if it's a default, does it? It was adjudicated. It was adjudicated. Yes, it does make a difference. Your Honor, there are some case laws that indicate that the Court should look a little bit differently where there was not an adjudication actually on the merits. But as a practical matter, no, in this matter. The second mark is the pending applied for mark. I'm sorry, the design word mark is Ashton Cabinet B.S.G. This can all come down to the same set of transactional facts. Precisely, Your Honor, that's the test. Well, looking at that, the 99 and the 2005 applications have the same use and commerce date. They have the same specimen picture. They recite the same identical goods, cigars. Why isn't this the same transactional fact? Because, Your Honor, if you look at page 26 of the appellant's initial brief, the blue brief, you will see the comparison of the two marks. The fundamental error made by the appellee here is, and perhaps Your Honor may be looking at this error as well, that is to compare things like the specimen. You don't compare the specimen. You compare the mark. The mark is Ashton Cabinet B.S.G. Virgin Sun Gross. You're relying on the same first use and commerce date. Certainly. Relying on the same specimen picture. Yes. You're reciting the identical goods. Yes. There's a lot of things starting to mount up to say this is the same as what we did before. There's no question those things are identical. We do not deny that, Your Honor. If you look at the chart on page 26, you will see that there are vast differences. The first is a design word mark. The second is a word mark. The first is six words. The second is four words. The first includes Cabinet B.S.G. The second is not. The first is 30 letters. The second is 20 letters. The first includes a repetition of five shields. I shouldn't go through all of this again, Your Honor, but you'll see that those are vast differences. There are at least 15 or 20 of those differences. You own the mark on Ashton, the birds in the sun, around there on page 26, the one that's marked suit. Yes. I assume you have. Yes, we've been using it since 1990. I assume you own that mark. And Clevenger took your old mark, right, and put it on his cigar product. Wouldn't you sue me for infringement? I probably would, Your Honor. That does not. So what you're doing is you are seeking to recoup the design of your office. No, Your Honor. I'm trying to register a different design. I'm not different design. Then you would have broader rights than what you have. Oh, it would. It would, absolutely. It is a word mark and a standard character mark, and it would give us some broader rights. Why isn't their species genus argument a good one? They said you surrendered the species, and now you want a genus. Is that the evolution argument, Your Honor? Well, that would be counted however you want. I'm not sure I understand that. Use the patent law analogy. Well, I'm not sure I understand that, frankly, Your Honor. But the TTAB, which argued that the second mark was an evolution of the first mark, quite frankly, doesn't make sense. It's illogical. Evolution means something exists first and then evolves into something else. Last night I pulled down origin of the species from my library to look this up. The point is made very well. However, the court probably knows the words evolution is not used by Charles Darwin in that volume anywhere. But the concept is the same. These two marks existed at the same time, and therefore one could not possibly evolve from the second. It just seemed to me that there was something preeminent going on and you were able to obtain now what you had lost before. Well, what I lost before was a design word mark, which is vastly different from the mark that I'm trying to register now. And page 2674. And wouldn't it be really, in a broader sense, confronting the same problem as we confronted in 99, that is, your conflict with the Gershwin family? Ultimately, that would be true, Your Honor. And ultimately, when we get to the merits, what we're here on is a procedural maneuvering point right now. I lost on a default. There's no question about that, Your Honor. No question. But their marks are different. And the requirement is, and the question is, or the nub of this case, is the prior adjudicated mark the same as the pending applied for mark? They're obviously not identical. So the case is saying, what's the commercial impression? Well, despite the fact that both of these marks have been used in commerce for nine years, Virgin put no evidence of record of the actual commercial impression of either mark in the marketplace, and the USPTO did not rely upon them. The differences, as I said, are set forth in page 26. The TTAB gave two reasons, only two reasons, and cited only two cases for their determination. In fact, Your Honor, the only determination and reasoning of the TTAB was one sentence. And I have that on page 13 of our applied brief. And it's just one sentence. It's 45 words. It only says, clearly Ashton, Virgin, Sun Grown evolved out of the word and design mark. And the deletion of the design and terms, cabinet VSG, are minor alterations. We do not rise to the level of the new mark. Sufficient to allow an applicant to seek registration here. So there are two reasons. One is the evolution argument. And I think I debunked that by showing that. You said derived from instead of evolved. Derived from? I think I have the same problem with that. It's not derived from. They existed at the same time. To derive means to come from something that exists before. And if it exists before, then it could derive. These didn't exist before. They existed simultaneously. They have the exact same date, July 12, 1999. But you can read that part of the TTAB in context. And they've set up just before that they're going to measure this for its commercial impression. And then they say, applying this analysis, we say the later mark is the same as the former. So aren't they applying the right test? It's the commercial impression? Oh, they applied the right test. They just didn't apply it correctly, Your Honor. I have no argument with their citation to the law, except strangely enough, they did not cite to this court's. My point is we're not talking about evolution. We're talking about them saying that commercial impression tells us these are the same mark. Oh, that's exactly what they said, Your Honor. I just think they're wrong about that. It's contrary to what this court said less than two years ago in the ThinkSharp case. This case is virtually identical to the ThinkSharp case. And I don't know how this court could have to overrule ThinkSharp, I think, to find against Holmes in this circumstance. But, yes, they did apply the correct law, Your Honor. There's no question about that. The conclusion, however, and the second conclusion, the conclusion that there is a minor alteration, I think, is clearly erroneous. Because, I mean, my goodness, if these changes are minor alterations, I guess I shouldn't complain the next time I go to my tailor and get a suit back that has three sleeves on it. There are substantial differences, and they're set forth in page 26. The case that they cite for minor alterations are a mark that was the identical word, and the only alterations were capitalization and a font change. It was the identical word. And that was the Aramotique case. Under those circumstances, and especially, Your Honor, I ask the court to take seriously the Supreme Court's admonition to examine the offensive use of res judicata carefully to determine whether it would be unfair to the defendant. That's the Barclay-Posery case. Again, this case, I believe, is virtually identical to ThinkSharp. And on that basis, we ask that the TTAB decision be reversed. Thank you, Your Honor. Judge Mayer, and may I please report? Can you distinguish our ThinkSharp case? ThinkSharp case is very strongly supportive of the appellee's position in this case. ThinkSharp is a case in which this court held that an administrative tribunal has substantial authority to adopt rules and procedures in furtherance of a statutory objective. And in the ThinkSharp case itself, that was a case in which there were two co-handed applications. And the Trademark Trial and Appeal Board, in making a practical judgment of whether one of its own prior judgments should or should not preclude the assertion of an application, entered a judgment that this court affirmed that in that particular circumstance, res judicata should not apply to bar assertion of a subsequent claim. So we feel that the position that the appellee is taking in this case is very much supported by the reasoning of the ThinkSharp case. The ThinkSharp case is an example of a case in which this court has repeatedly, over the past 24 years, as the Board has, applied Section 24 of the Restatement Second of Judgments to determine whether or not a prior judgment of the agency that extinguishes an applicant's claim of right to registration should extinguish a subsequent claim made in a subsequent case. And that standard holds that where there's a final judgment of an agency that extinguishes an applicant's claim of right to registration, that judgment extinguishes all rights to all remedies with respect to all or any part of the transaction or series of connected transactions out of which the extinguished claim arose. But they say this is different. They say the first one was a design, which is similar to the ThinkSharp case. You had a distinction between a word mark and a design mark. And they say the distinction is similar here. They had a design. They now have a word mark. They're different. They go through it on page 26, 30 words versus 30 letters versus 20 letters and so forth. Yes, but as the questions from the bench have very clearly brought out, the claim that's being made now is a much broader claim that includes and encompasses the earlier rejected claim in exactly the genus species context. That's the difference. This is not a situation in which a narrower or different claim is being made that doesn't encompass the previously rejected claim. So yes, in the second case, the plaintiff is asserting that my use in Congress of this cigar ban since July 12, 1999, I am now asserting to vest in me this much broader right of registration than what I previously claimed. But there is no question, as the concessions from this lecture have established today, that the claim that's being made now is one that includes and encompasses the earlier rejected claim. So to that extent, there is true identity. The board clearly was correct in reaching its judgment in this case. And it seems to me that it's pretty much as simple as that. Except if the commercial impression of the broader is different from the commercial impression of the narrower. In other words, the species here is a design. It has a conceivably different commercial impression than the word mark. And if that makes them different for trademark law, that's everything, isn't it? It's whatever, it's the consumer's impression controls the whole likelihood of confusion test and puts us into a different set of transactional facts for trademark purposes, doesn't it? I don't believe so, Your Honor, because the only difference is the characterization of the entitlement. The underlying transactional facts are identical. Everybody is recognized. It's the same, exact same physical entity that the applicant claims to have used since July 12, 1999, continuously. So the underlying transactional facts that are alleged to support the assertion of entitlement are identical. And the critical point is that the claim being made now includes the prior claim. So that there is no question, but that there is identity in that sense. So there can't possibly be any difference because it's conceded here in response to Judge Webber's questions. When you apply for a block letter registration like this, under this court's precedence, it's very clear that there is no restriction as to the stylization that that registration would encompass. So exactly as Judge Webber correctly asked, this registration, if granted, would encompass the identical mark. And indeed, it's conceded on page 7 of the request. So, I mean, you know, Farron, I'm not certain you've satisfied me with your answer to Judge Rager. Let's assume that the original mark had been for cherry-flavored, syrupy coal. And the later mark was just for coal. The question then would be, is the commercial impression the same about just coal, any old kind of coal, or this highly specialized cherry-flavored, syrupy coal? I think what Judge Rager was saying to you is, are you all that confident that the commercial impression, even though the coal mark would cover the species, if you will, couldn't the commercial impression still be different? A block letter registration could, in theory, support a claim of exclusive right to a mark that did have a different commercial impression. But that doesn't save this applicant, because that same breadth of scope picks up and captures the equivalent of the prior argument. So there's no getting away from the fact that a block letter application like this will inevitably encompass and be trapped in the preexisting lost entity that was the subject of the prior judgment. So the Board got it exactly right in Applying Section 24 of the Restatement. It's very clear. It's focusing on the rights that flow from an underlying set of transactional facts. And what the applicant here is doing is it's making a claim that clearly could have been raised. It's supported by the exact same set of events. And now it's just asserting that I'm entitled to a block letter registration, whereas previously I argued for a narrower entitlement. So it's no doubt the case that they're making a broader claim of entitlement. But that broader claim, it's very direct. Even if it would, it encompasses the preexisting subject matter. Are there no further questions? I'll subside. Thank you very much. Your Honor, I just didn't have a minute. I heard no significant distinguishing of things, Your Honor, and I hope the Court didn't either. The TTAB is human and makes mistakes, and this Court is certainly not a rubber stamp. Even the President made a mistake the other day. So I think the TTAB can certainly make them. The key is the commercial impression here. And, frankly, I don't know how any person can look at page 26 and see these two marks and say that the commercial impression is identical, the differences are manifest and obvious. And that is the case. His point is you can take the word mark and put the curly Qs on it and have the mark that you had before, and that's been precluded. But it wouldn't be protected. It would not be protected. If I use this today, that would not be protected by any registration. It might have common law benefits, but it wouldn't be protected by any registration. The only thing protected would be the actual word marks, not the curly Qs and all the other features, which are set forth in detail in page 26. They simply would not be protected. And all I'm trying to do is to protect this. And there are substantial case laws. There are case laws that we cite. For example, you mentioned an example which is similar to some that exist in the case law, such as the ranch, steak, and seafood case. Ranch, steak, and seafood use the printed words and then they use stylized version. In that case, that was not held to be res judicata. There's another one that is mist and cognac to Canadian mist and cognac. Well, those are identical. And my goodness, the differences set forth in page 26 of our brief are much more substantial than that. To what extent do we need to defer to the TTAB's commercial impression judgment here? Your review is plenary, Your Honor, first of all. And second, while I have the utmost respect for the TTAB, their view of commercial impression Instead of turning on the analysis of whether the transactional facts are the same and that turns on the commercial impression, isn't that an underlying factual consideration that deserves difference? I don't think so, Your Honor. I think it's commercial impression. The question of commercial impression tested plenary review. And your commercial impression, it's not a factual question. Your honors can look at page 26 and look at those two marks and say what the commercial impression. The record is very thin in this case because it was on a motion for summary judgment before discovery even started. So there's no evidence of actual commercial impression. There's no surveys. There's no testimonies, nothing like that, upon which the TTAB could have based it, other than what you and I can do, and that is to look at it and give our gut reaction as to what the commercial impression is and, more importantly, compare it to this court's and the TTAB's prior decisions in which similar cases have found there to be no res judicata, such as the Miston-Conac case and the Ranch-Seaton case. Thank you, Your Honors. All rise.